## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | 2:14-cr-00244 |
| | ) | |
| | ) | |
| REGINALD HARRIS, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

**Mark R. Hornak, Chief United States District Judge**

Before the Court is Mr. Reginald Harris's *pro se* Motion for Compassionate Release/Reduction of Sentence pursuant to 18 U.S.C § 3582(c)(1)(A)(i) ("Motion"). On May 21, 2018, this Court sentenced Mr. Harris to a 96-month term of imprisonment followed by a five-year term of supervised release. (ECF No. 133.) On July 24, 2020, Mr. Harris filed this Motion, citing concerns about his underlying health issues given the COVID-19 pandemic and about care for his wife, Mrs. Darla Harris, who is disabled. (ECF Nos. 140, at 1; 150-2, at 2.).

Based on the record before it, the Court concludes that Mr. Harris's Motion is procedurally proper. However, the Court concludes that Mr. Harris's circumstances are not "extraordinary and compelling reasons" for his release or sentence reduction as § 3582(c)(1)(A)(i) requires, and that even if they were, consideration of the sentencing factors set forth in § 3553(a) counsels against Mr. Harris's release or a reduction in his original sentence. Accordingly, Mr. Harris's Motion for Compassionate Release/Reduction of Sentence pursuant to § 3582(c)(1)(A)(i) (ECF No. 140) is DENIED without prejudice.

## I.   **BACKGROUND**

On August 7, 2015, Mr. Harris pleaded guilty to a two-count indictment charging him with conspiracy to commit bank and mail fraud in violation of 18 U.S.C. §§ 1341, 1344 (Count one) and conspiracy to defraud the United States in violation of 18 U.S.C. § 371 (Count two). (ECF Nos. 1, at 1, 3; 28, at 1.) The Court imposed a 96-month term of imprisonment concurrent as to both Counts of conspiracy, followed by a five-year term of supervised release at Count One and a three-year term of supervised release at Count Two, also to run concurrently with one another. (ECF No. 133, at 2.) The Court additionally ordered restitution of $246,170.03 and imposed a $200.00 special assessment. (*Id.* at 6.) Of the 96-month term of imprisonment, 21 months would run concurrent with a federal sentence that Mr. Harris received on February 5, 2015 for a different offense, at No. 3:14-cr-18, and the remaining 75 months would run consecutive to that prior sentence. (*Id.* at 2.)

On July 24, 2020, Mr. Harris filed a *pro se* Motion for Compassionate Release/Reduction of Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (ECF No. 140.) In his Motion, Mr. Harris states that he has three medical conditions—asthma, diabetes, and heart disease—which he asserts would lead a COVID-19 infection to be fatal if he were to contract the virus. (*Id.* at 1.) Additionally, Mr. Harris states that he is the primary caregiver for his wife, who is disabled and "has been in [the Harrises'] house alone" since Mr. Harris was incarcerated. (*Id.*) Finally, Mr. Harris discusses his conduct while incarcerated, stating that he has participated in institutional programming throughout his incarceration, has no misconduct citations, and, at the time of filing his Motion, expected a reduction in his "points" (from 18 to 16) within three months. (*Id.*)

On February 25, 2021, this Court entered an Order stating that it would not rule on Mr. Harris's Motion unless and until Mr. Harris's trial counsel filed documentation with the Court

demonstrating that Mr. Harris had exhausted his Bureau of Prisons (BOP) administrative remedies regarding a motion for reduction of his sentence. (ECF No. 148.) That Order gave Mr. Harris's trial counsel the option to file a supplement to the *pro se* Motion within 30 days after providing documentation showing administrative exhaustion. (*Id.*)

On March 1, 2021, Mr. Harris's trial counsel submitted a Notice of Filing and Denial of Reduction in Sentence for Compassionate Relief ("Notice"), which shows that Mr. Harris filed a request for a reduction of his sentence with the warden at Federal Correctional Institution (FCI) Hazelton, where Mr. Harris is incarcerated, and that the warden denied the request on January 29, 2021. (ECF Nos. 150, at 1; 150-1, at 1; 150-2, at 1–2.) Mr. Harris's request to the warden states that Mr. Harris (1) suffers from asthma, diabetes, heart disease, and anemia, (2) is "going blind," (3) is 54 years old, placing him "in the higher-risk group to die" if he contracts COVID-19, and (4) "ha[s] not been given the proper medical care that [he] need[s], nor ha[s] [he] been given the proper diagnosis." (ECF No. 150-2, at 1–2.) After Mr. Harris's counsel filed the Notice, the defense did not file a supplement to Mr. Harris's Motion as the Court permitted in its February 25, 2021 Order, and the Court then instructed the Government to respond to Mr. Harris's Motion. (ECF No. 151.)[1]

The Government filed its Response to Defendant's Motion to Reduce Sentence ("Response") on June 4, 2021. (ECF No. 152.) The Government contends that Mr. Harris "suffers from no serious ailments that constitute extraordinary and compelling reasons for his release." (*Id.* at 1.) Further, the Government states that Mr. Harris "is a danger to the community" and "has an atrocious criminal history," and that his conduct in this case "was so egregious that any reduction

---

[1] On August 24, 2021, the Court also instructed the Government to obtain Mr. Harris's BOP medical records and file them under seal, having not received them from Mr. Harris or his counsel. (ECF No. 153.) The Government filed those records on September 7, 2021 and supplemented them with the most current medical record information on September 13, 2021. (ECF Nos. 154, 154-1, 156.)

in his sentence would be inconsistent with 18 U.S.C. § 3553." (*Id.* at 1–2.) The Government's Response does not address the family circumstances that Mr. Harris raises in his Motion. (*See id.* at 1–2.)

## II.   LEGAL STANDARD

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007); *see also Dillon v. United States*, 560 U.S. 817, 819 (2010) (citing 18 U.S.C. § 3582(c)). One such specific authorization is the First Step Act's amendment of 18 U.S.C. § 3582. As amended, that provision allows a court to reduce a defendant's term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." § 3582(c)(1)(A)(i). In addition, the court must consider: (1) whether the defendant has exhausted the appropriate administrative remedies; (2) the factors set forth in 18 U.S.C. § 3553(a) to the extent that they apply; and (3) whether such a reduction is consistent with applicable U.S. Sentencing Commission policy statements. § 3582(c)(1)(A).

## III.   DISCUSSION

After analyzing the record before the Court, the Court concludes that while Mr. Harris's Motion is properly before it, neither Mr. Harris's medical conditions nor Mrs. Harris's disability constitute "extraordinary and compelling reasons" for releasing Mr. Harris or reducing his sentence. § 3582(c)(1)(A)(i). Further, even if Mr. Harris had demonstrated that such extraordinary and compelling circumstances exist, the Court concludes that releasing Mr. Harris from custody or reducing his sentence at this time would be inconsistent with the § 3553(a) sentencing factors and would thus be improvident. *Id.*

A.  **Administrative Exhaustion**

To consider the merits of Mr. Harris's Motion, the Court must first ensure that Mr. Harris has complied with § 3582(c)(1)(A)'s exhaustion requirement. Prior to petitioning a court for relief under § 3582(c), a defendant must first file an administrative request for compassionate release or a sentence reduction with the warden of the facility where the defendant is incarcerated; the defendant must then either (1) "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or (2) wait 30 days from the date on which the defendant filed an administrative request with the warden. § 3582(c)(1)(A). The Third Circuit has confirmed that either option for administrative exhaustion under § 3582(c)(1)(A), standing alone, is sufficient to satisfy the exhaustion requirement. *See United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020) (explaining that "the statute states that [a] defendant may file [a] motion [in the district court] thirty days after the warden receives his request" regardless of whether the warden has denied the request within those thirty days).

Here, the Court concludes that Mr. Harris has met the administrative exhaustion requirement. On March 1, 2021, after this Court stated that it would not rule on Mr. Harris's Motion until his counsel demonstrated administrative exhaustion (ECF No. 148), Mr. Harris's counsel submitted a Notice of Filing and Denial of Reduction in Sentence for Compassionate Relief (ECF No. 150). That Notice demonstrates that Mr. Harris filed a request with the warden at FCI Hazelton, where he is incarcerated, on an unknown date. (ECF No. 150-2.) Mr. Harris's request to the warden cites medical conditions that Mr. Harris included in his Motion (asthma, diabetes, and heart disease) as well as anemia and partial blindness; states that he is 54 years old and thus in a higher-risk group for serious COVID-19 infection; refers to his wife's disability and his role as her primary caregiver; and states that he has served over 50 percent of his sentence. (*Id.*

at 1–2.) The warden denied the request on January 29, 2021, stating that a review of Mr. Harris's case by his medical provider revealed that Mr. Harris did not meet the criteria for reduction in sentence based on his medical conditions. (ECF 150-1, at 1.) Because more than 30 days have elapsed since the warden's denial, more than 30 days have necessarily passed since Mr. Harris filed his request with the warden. The Government does not contest administrative exhaustion. (*See* ECF No. 152, at 1–2.) Thus, based on the record before the Court, Mr. Harris's Motion is now properly before the Court under the second option for administrative exhaustion per § 3582(c)(1)(A).[2]

### B.  **"Extraordinary and Compelling Reasons"**

Next, the Court must determine whether (1) Mr. Harris's medical conditions in light of the COVID-19 pandemic and/or (2) Mrs. Harris's disability rise to an "extraordinary and compelling" level, such that § 3582(c)(1)(A)(i) would permit this Court to release Mr. Harris from prison or reduce his sentence. They do not.

Section 3582 does not define the phrase "extraordinary and compelling reasons." *See* § 3582(c)(1)(A)(i). Instead, Congress delegated that task to the Sentencing Commission. *See* 28 U.S.C. § 994(t) (stating that the Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"). The Sentencing Commission defined "extraordinary and

---

[2] Section 3582(c)(1)(A) states that, "upon a motion of the defendant *after* . . . the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility" (emphasis added), a district court may reduce the defendant's sentence if the other statutory requirements are met. This language suggests that the motion in the district court must occur after the request to the warden. Given that Mr. Harris's request for a reduction in sentence to the warden is undated (*see* ECF No. 150-2, at 1–2), it is impossible to determine whether Mr. Harris filed that request or this Motion first. Nonetheless, the Court concludes that Mr. Harris has met the administrative exhaustion requirement and that the Motion is properly before the Court, given that: (1) the grounds Mr. Harris cites in his request to the warden include those contained in Mr. Harris's Motion; (2) more than 30 days have elapsed since Mr. Harris filed his request with the warden (based on the January 29, 2021 date of the warden's denial); and (3) the Government did not contest administrative exhaustion in its Response following Mr. Harris's counsel's Notice regarding exhaustion. (ECF Nos. 150-1, at 1; 150-2, at 1–2; 152, at 1–2.)

compelling reasons" under the pre-First Step Act version of § 3582(c)(1)(A)(i) in a policy statement contained in § 1B1.13 of the U.S. Sentencing Guidelines Manual (the "Guidelines")— relating to the BOP's discretion to reduce a prisoner's term of imprisonment—but the Commission has not updated the policy statement since the First Step Act became law. *See United States v. Rodriguez*, 451 F. Supp. 3d 392, 396 (E.D. Pa. 2020).

In *United States v. Andrews*, the Third Circuit recently explained that, given the lack of an updated applicable Sentencing Commission policy statement defining "extraordinary and compelling reasons," "the existing policy statement is not applicable—and not binding—for courts considering prisoner-initiated motions" for compassionate release. No. 20-2768, 2021 WL 3852617, at *3 (3d Cir. Aug. 30, 2021). However, "although the policy statement is no longer binding, it still sheds light on the meaning of extraordinary and compelling reasons." *Id.* at *4. This is because "Congress legislates against the backdrop of existing law," and thus, by "reenact[ing] the compassionate-release statute without any alterations to the phrase 'extraordinary and compelling reasons,'" Congress likely intended the phrase to retain the meaning that the Sentencing Commission gave it in its pre-First Step Act policy statement. *Id.* Therefore, in reviewing this Motion, this Court does not treat the provisions of U.S.S.G. § 1B1.13 and its Application Notes as "an ultimate binding authority," but the Court nonetheless considers them as a guide in its analysis.

### 1. Mr. Harris's Medical Conditions

First, the Court finds that, based on the record before it, Mr. Harris's medical conditions and associated COVID-19-related risks do not constitute "extraordinary and compelling reasons" warranting a reduction in his sentence. 18 U.S.C. § 3582(c)(1)(A)(i). As relevant to Mr. Harris's situation, the Application Notes to § 1B1.13 of the Guidelines discuss non-terminal medical

conditions that can rise to an extraordinary and compelling level, and that, if so, would support compassionate release. *See* § 1B1.13, cmt. n.(1)(A)(ii). The Application Notes suggest that non-terminal medical conditions may constitute extraordinary and compelling reasons for a sentence reduction if "a defendant is suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.*

Mr. Harris's Motion states that he suffers from asthma, diabetes, and heart disease, "which will help COVID-19 to be fatal" if he contracts the virus. (ECF No. 140, at 1.) His request to the warden mentions those conditions in addition to anemia and developing blindness; states that Mr. Harris is 54 years old, placing him "in the higher-risk group to die" if he contracts COVID-19; and states that he "ha[s] not been given the proper medical care that [he] need[s], nor ha[s] [he] been given the proper diagnosis." (ECF No. 150-2, at 1.) In response, the Government states only that Mr. Harris "suffers from no serious ailments that constitute extraordinary and compelling reasons for his release." (ECF No. 152, at 1.)

Mr. Harris's BOP medical records confirm that he has experienced problems related to prediabetes, asthma, anemia, and eye-related conditions including myopia and glaucoma. (ECF Nos. 154-1, at 1, 31; 156, at 9.) Specifically, Mr. Harris was diagnosed with prediabetes in June of 2020, and medical providers discussed dietary management and other lifestyle changes with him prior to and at the time of diagnosis. (ECF No. 154, at 4, 17; ECF No. 154-1, at 11.) Mr. Harris has complained of asthma on multiple occasions, has been prescribed inhalers to address "unspecified abnormalities of breathing," and was ultimately diagnosed with asthma in April of 2021. (ECF Nos. 154-1, at 1–4; 156, at 10, 29.) In addition, Mr. Harris's lab results around July of 2021 reflected anemia. (ECF No. 156 at 9.) Finally, Mr. Harris was diagnosed with myopia and

glaucoma in May and August of 2019, respectively (ECF No. 154-1, at 31), and he has been prescribed medication for glaucoma (*id.* at 11–12; ECF No. 154, at 2). While Mr. Harris asserts in his Motion that he suffers from heart disease (ECF No. 140, at 1), his medical records are inconclusive in that regard, indicating that Mr. Harris has a family history of heart disease and that he has experienced tachycardia (i.e.,  fast heart rate) throughout his adult life but also showing that he is at low cardiovascular risk (ECF No. 156, at 10. 51). On the other hand, Mr. Harris's medical records document problems that neither his Motion nor request to the warden address (*see* ECF Nos. 140, at 1; 150-2, at 1–2), such as dental issues, including periodontitis (ECF Nos. 154, at 44; 154-1, at 31; 156, at 29), or gum disease, and problems with knee pain due to a meniscus tear (ECF Nos. 154-1, at 6–7; 156, at 29), neither of which Mr. Harris's Motion nor request with the warden address.

Regarding the COVID-19 pandemic, Mr. Harris's medical records do not indicate that he has contracted, been exposed to, or is at a heightened risk of a COVID-19 infection. (*See* ECF Nos. 154, 154-1, 156.) Readily available and public COVID-19 information provides some insight as to whether Mr. Harris's conditions given the COVID-19 pandemic constitute extraordinary and compelling circumstances. According to the Centers for Disease Control and Prevention (CDC), asthma (if moderate to severe), diabetes (whether type 1 or type 2), and heart conditions "can make [a person] more likely to get severely ill from COVID-19." *People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention (May 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. "Severe illness" means that the person is at risk of death or may need hospitalization, intensive care, or a ventilator for breathing support if the person contracts COVID-19. *Id.* In addition, some studies have found a correlation between anemia and severe COVID-19

illness. *See, e.g.*, Timotius Ivan Hariyanto & Andree Kurniawan, *Anemia Is Associated with Severe Coronavirus Disease 2019 (COVID-19) Infection*, Nat'l Ctr. for Biotechnology Info., PubMed Cent. (Aug. 28, 2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7452827/. The CDC has not advised that myopia, glaucoma, periodontitis, or physical injuries such as a meniscus tear pose the same risks of "severe illness" should a person with those conditions contract COVID-19. CDC data indicates that more than 95 percent of COVID-19 deaths occur in people over age 45, with more than 80 percent of deaths occurring in people over age 65. *People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention (May 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

Mr. Harris's medical records indicate that Mr. Harris received both doses of the Pfizer-BoiNTech COVID-19 vaccine in April of 2021. (ECF No. 156, at 37.) COVID-19 vaccines reduce the risks of infection and of severe illness or death if infected. *See COVID-19 Vaccines Work*, Ctrs. for Disease Control & Prevention (May 20, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html. Studies have shown that the mRNA vaccines, Pfizer-BioNTech and Moderna (for which more effectiveness data is available given the longer availability of these vaccines), "reduce the risk of COVID-19, including severe illness, among people who are fully vaccinated by 90 percent or more." *Id.* Further, even though no COVID-19 vaccine can guarantee that a vaccinated person will not contract the virus, "there are some data to suggest that vaccination may make symptoms less severe" in the person, and "mRNA [] vaccines have been shown to provide protection against severe illness and hospitalization." *Id.*

Finally, the Court notes that FCI Hazelton currently reports four positive COVID-19 cases. *See COVID-19: Coronavirus*, Fed. Bureau Prisons, https://www. bop.gov/coronavirus/ (last

updated Sept. 16, 2021). Of the 1,946 inmates at FCI Hazelton, over time 135 inmates have contracted COVID-19, including the four inmates who are currently positive, 130 inmates who have recovered, and 1 inmate who died from the illness. *Id.*; https://www.bop.gov/locations/institutions/haf/.

Based on the record before it, the Court cannot conclude that Mr. Harris's medical conditions, even in the context of the COVID-19 pandemic, constitute extraordinary and compelling reasons warranting his early release. First, despite the varied and recurring health problems that Mr. Harris's Motion and BOP medical records highlight, they fall short of demonstrating that any of those conditions alone or in combination is "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.(1)(A)(ii). And while Mr. Harris asserts in his BOP request that he has not received proper medical care or diagnoses at FCI Hazelton, the available and extensive medical records suggest that the medical providers who have examined Mr. Harris have evaluated Mr. Harris's medical concerns, diagnosed him with health conditions based on those evaluations, discussed preventative care and treatment options with him, and prescribed him medication. (*See, e.g.*, ECF Nos. 154, at 1, 4, 17, 62; 154-1, at 1, 6, 11, 31, 51, 55; 156, at 10, 29, 43.)

As for the impact of COVID-19 on Mr. Harris's circumstances, while available COVID-19 information and transmission data at FCI Hazelton demonstrate that Mr. Harris *may* contract COVID-19 and be at risk of severe illness if so infected given certain of his health conditions, such information is far from compelling given the limited information on how COVID-19 has affected or might affect Mr. Harris specifically. For instance, the severity of Mr. Harris's medical

conditions could well influence the risks he faces, given that, for example, moderate to severe asthma poses serious COVID-19-related risks, but less severe asthma does not. But the records available to the Court do not make or even suggest that differentiation or the presence of that or another medical condition that would meet the requisite threshold of either acute or chronic severity.[3] Further, the record shows that Mr. Harris is fully vaccinated against COVID-19, having received two doses of an mRNA COIVD-19 vaccine, and data on the effectiveness of such vaccines suggests that Mr. Harris would be well protected against serious illness or hospitalization from the virus were he to contract it.

Given that the Court is denying Mr. Harris's Motion without prejudice, Mr. Harris is free to file an amended motion should he have further evidence demonstrating that a condition from which he suffers is of sufficient severity or impact so as to likely constitute an extraordinary and compelling reason for his release in his specific case. However, on the current record, Mr. Harris's present Motion has not demonstrated extraordinary and compelling circumstances related to Mr. Harris's medical conditions that warrant his early release.

### 2.  **Mrs. Harris's Disability**

Second, the Court concludes that, based on the record before it, Mrs. Harris's disability does not constitute an "extraordinary and compelling reason[]" warranting a reduction in Mr. Harris's sentence. 18 U.S.C. § 3582(c)(1)(A)(i). As relevant regarding Mrs. Harris's disability, the

---

[3] The Court has reviewed the nearly two hundred pages of BOP medical records submitted into the record. Of particular note is that the records reflect extensive preventative and acute medical care being provided to Mr. Harris, including ophthalmic and dental care for both chronic and acute conditions, recent and frequent blood work analysis, a recent electrocardiogram, and rather extensive interactions with the relevant medical professionals on an ongoing basis. (*See* ECF Nos. 154, 154-1, 156.) The records of lab work done in June of 2021 also reflect relevant cardiac-related test results as being within normal ranges and a most recent hemoglobin A1c score of 5.4, within what the test reports themselves indicate are normal ranges for that indicator of diabetes. (ECF No. 156, at 51, 54.) To the extent the records reflect prescriptions for inhalers for the mitigation of acute asthma, they do not facially reflect that Mr. Harris' asthma was of a specifically heightened level of severity.

U.S.S.G. § 1B1.13 provisions and Application Notes describe another category of circumstances, separate from the defendant's medical conditions, that may provide extraordinary and compelling reasons for a sentence reduction: the defendant's family circumstances. § 1B1.13, cmt. n.(1)(C). Specifically, the Application Notes provide that "[t]he incapacitation of the defendant's spouse . . . when the defendant would be the only available caregiver for the spouse" is an extraordinary and compelling reason to reduce the defendant's sentence. § 1B1.13, cmt. n.(1)(C)(ii).

The Application Notes do not define "incapacitation." Instead,  courts have generally looked to the pertinent BOP guidelines for direction. *See, e.g.*, *United States v. Doolittle*, No. 19-501, 2020 WL 4188160, at *2 (D.N.J. July 21, 2020); *United States v. Collins*, Nos. 15-10188, 17-10061, 2020 WL 136859, at *4 (D. Kan. Jan. 13, 2020). BOP Program Statement § 5050.50—the post-First Step Act BOP program statement describing the BOP's approach to sentence reduction requests under § 3582(c)—defines "incapacitation" of a defendant's spouse as either the spouse having "suffered a serious injury, or a debilitating physical illness[,] and the result of the injury is that the spouse . . . is completely disabled, meaning that the spouse . . . cannot carry on any self-care and is totally confined to a bed or chair," or the spouse having "a severe cognitive deficit." Program Statement No. 5050.50: Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g), Fed. Bureau Prisons 10 (Jan. 17, 2019), https://www.bop.gov/policy/progstat/5050_050_EN.pdf. The Program Statement also provides that a defendant seeking compassionate release based on incapacitation of a spouse "should demonstrate that the inmate is the only available caregiver for the spouse . . . , meaning there is no other family member or adequate care option that is able to provide primary care for the spouse." *Id.* Further, the defendant should provide "adequate information and documentation . . . including, but not limited to, a statement and verifiable medical documentation regarding the spouse's

incapacitation, a statement and letters of documentation that the inmate is the only family member is the only family member capable of caring for the spouse, and a statement and documentation regarding the inmate's release plan." *Collins*, 2020 WL 136859, at *4 (quoting BOP Program Statement § 5050.50); *see, e.g.*, *Doolittle*, 2020 WL 4188160, at *3 (denying the defendant's motion for release due to family circumstances because the defendant "presented no medical documentation or other competent evidence demonstrating that his wife is incapacitated," and because while "[h]e argue[d] that she has difficulty handling daily tasks on her own and is desperate for him to return home, [] there [was] no indication that she is unable to care for herself or that she is immobile").

In his Motion, Mr. Harris states that his wife is disabled, receives Social Security Disability Insurance (SSDI) benefits, and has been living at the Harrises' home alone since Mr. Harris was incarcerated, and that Mr. Harris is her primary caregiver. (ECF No. 140, at 1.) Mr. Harris's request to the warden also mentions his wife's disability and his role as her primary caretaker. (ECF No. 150-2, at 2.) Neither Mr. Harris's Motion nor his request identify the type of disability Mrs. Harris has, the severity and progression of her disability, the availability of other people or care options besides Mr. Harris to provide Mrs. Harris's primary care, or other relevant information about Mrs. Harris's circumstances related to her disability. (*See* ECF Nos. 140, at 1; 150-2, at 1–2.) The Government does not address Mr. Harris's family circumstances in its Response. (*See* ECF No. 152, at 1–2.)

Based on the record before it, this Court cannot conclude that Mrs. Harris's disability rises to the level of incapacitation that the U.S.S.G. § 1B1.13 provisions and Application Notes and the BOP's approach to sentence reduction requests suggest is required for a sentence reduction due to family circumstances. The record contains no evidence of the type, severity, or progression of Mrs.

Harris's disability, let alone evidence that Mrs. Harris "cannot carry on any self-care and is totally confined to a bed or chair," nor it does provide any detail about Mrs. Harris's care options. Further, it is uncertain whether Mr. Harris is the only available caregiver for Mrs. Harris, given that Mr. Harris has been incarcerated for several years and has not been able to directly care for her during that time. While the Court is sympathetic to the Harrises' circumstances and has no reason to doubt that Mr. Harris has played an important role in Mrs. Harris's care in the past, the Court cannot assume from the record currently before it that Mrs. Harris's disability constitutes incapacitation under the § 1B1.13 provisions and Application Notes, even if they are considered to be only advisory in nature.

As the Court previously noted, this Motion is denied without prejudice, allowing Mr. Harris to file a new motion should he have further evidence demonstrating that Mrs. Harris's disability is an extraordinary and compelling reason for his release.

### C.  The § 3553(a) Factors

Even if the Court were to find that the record before it demonstrates "extraordinary and compelling reasons warrant[ing] [] a reduction" in Mr. Harris's sentence, on the record now before the Court, it concludes that the record does not demonstrate a basis to release Mr. Harris or reduce the imposed sentence, considering the 18 U.S.C. § 3553(a) factors for imposition of a sentence. § 3582 (c)(1)(A).

The determination of "whether to reduce an eligible defendant's term of incarceration for compassionate release after considering the § 3553(a) factors is committed to the discretion of the [district court]." *United States v. Jones*, No. 12-000038, 2020 WL 3871084, at *4 (W.D. Pa. July 8, 2020) (citing *United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020)). That discretion includes the district court's authority to consider the length of the defendant's original custodial

sentence, including the portions served and remaining, when weighing the § 3553(a) factors. *Pawlowski*, 967 F.3d at 330–31. "In considering the section 3553(a) factors, [the Court] should assess whether those factors outweigh [any] 'extraordinary and compelling reasons' warranting compassionate release, particularly whether compassionate release would undermine the goals of the original sentence." *United States v. Bess*, 455 F. Supp. 3d 53, 66 (W.D.N.Y. Apr. 22, 2020) (citation omitted).

Thus, if the Court were to conclude that there were the requisite extraordinary and compelling circumstances in Mr. Harris's case, the Court would next need to address whether Mr. Harris serving the remainder of his sentence is a punishment that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing given those circumstances. 18 U.S.C. § 3553(a). In his Motion, Mr. Harris states that he has been participating in institutional programming throughout his incarceration, has no misconduct citations, and expected a reduction in his "points" (from 18 to 16) within three months after filing the Motion. (ECF No. 140, at 1.) Mr. Harris's request to the warden states that he had completed fifty (50) percent of his sentence at the time he filed the request. (ECF No. 150-2, at 1.) The Government, on the other hand, argues that Mr. Harris "is a danger to the community" and "has an atrocious criminal history," and that his conduct in this case "was so egregious that any reduction in his sentence would be inconsistent with 18 U.S.C. § 3553." (ECF No. 152, at 1–2.)[4] Further, the Government notes that Mr. Harris "is not scheduled to be released until 2028" (ECF No. 152, at 1), which is consistent with Mr.

---

[4] The Government highlights in its Response that Mr. Harris "has spent much of time while incarcerated filing false tax returns and teaching others how to file false tax returns." (ECF No. 152, at 2.) However, the Government does not present evidence that Mr. Harris has continued such conduct since this Court sentenced him for the bank and mail fraud Counts in 2018, and rather "refers the Court to its various sentencing pleadings in this case (ECF Nos. 43, 54, 58, 111, and 122), this Court's Tentative Findings (ECF No. 119), and the defendant's Presentence Investigation Report (ECF No. 33)." (*Id.* at 1–2.) Thus, this Court assumes that the Government's statement about Mr. Harris's time filing false tax returns and teaching others to do so refers to pre-sentencing conduct that the Court accounted for in sentencing Mr. Harris, as the record does not include evidence that it has been continuing while Mr. Harris has been under the sentence imposed by this Court in this case.

Harris's release date of March 16, 2028 according to the BOP. *Find an Inmate*, Fed. Bureau Prisons, https://www.bop.gov/inmateloc/ (last visited Sept. 16, 2021).

The record now before the Court, considering the § 3553(a) factors, and considering  them in the context of the circumstances Mr. Harris now advances, continues to support a conclusion that Mr. Harris's original sentence of 96 months, 21 of which would run concurrent with his prior sentence and the remaining portion of which would run consecutive to it, remains necessary to fulfill the purposes of sentencing. In particular, based on the record before it, the Court finds significant "the history and characteristics" of Mr. Harris and the need for Mr. Harris's sentence "to reflect the seriousness of the offense" and "to afford adequate deterrence to criminal conduct." § 3553(a)(1)–(2).

First, both Mr. Harris's and the Government's pleadings speak to Mr. Harris's history and characteristics per § 3553(a)(1)—Mr. Harris states that he has exhibited good behavior while incarcerated by participating in institutional programming and not receiving any "misconducts" (ECF No. 140, at 1), while the Government highlights Mr. Harris's "atrocious criminal history" and "dangerous[ness] to the community" (ECF No. 152, at 12).

Ultimately, the Court agrees with the Government that Mr. Harris's history and characteristics support the sufficiency and necessity of the current sentence on the record as it now exists. As this Court concluded when it sentenced Mr. Harris, his criminal history has reflected "a wide array of criminal activities," including fraud, theft, drug-related offenses, and threats of violence. (ECF No. 136, at 27:1–11.) Mr. Harris has not demonstrated a steady commitment to turning those activities around, given that the conspiracy offenses underlying Mr. Harris's sentence at issue stemmed from conduct Mr. Harris engaged in while incarcerated for a prior offense. (*Id.* at 24:10–15.) That conduct consisted of leading "a complicated and sophisticated tax fraud scheme"

that was difficult to detect and influencing many people to commit crimes, including people who were not criminally predisposed. (*Id.* at 24:1–25:12.) Even considering the instances of more current good behavior in prison that Mr. Harris references in his Motion, these would not in the Court's judgment sufficiently offset Mr. Harris's extensive criminal history, including some material past criminal conduct occurring within prison itself.

Maintaining the original sentence also best serves the purposes of sentencing per § 3553(a)(2). First, Mr. Harris's conspiracy offenses were most serious because they influenced the administration of federal tax law and the efficiency of federal prison operations. (*Id.* at 25:13–18.) Further, Mr. Harris was the primary orchestrator of the scheme and was highly successful in gaining participation from others, some of whom would not have been predisposed to engage in criminal activity of that, or of any, kind. (*Id.* at 24:24–25:5.) Second, reducing Mr. Harris's sentence would not adequately deter his conduct. While the Court noted when sentencing Mr. Harris that incarceration might not effectively deter his conduct, given that he engaged in the relevant conduct while incarcerated for another crime (*id.* at 27:25–28:6), in the Court's estimation, neither would releasing him now. Further, the Court notes the possibility that incarceration *has* begun to succeed in deterring Mr. Harris, at least partially, given the satisfactory record that he cites in his Motion. (ECF No. 140, at 1.)

In sum,  releasing Mr. Harris now when he is not due to be released for over seven more years would run contrary to the § 3553(a) factors, given Mr. Harris's criminal conduct, the seriousness of Mr. Harris's crimes underlying the sentence at issue in this Motion, and the need for the sentence to deter his criminal conduct and to protect the public from further criminal conduct by Mr. Harris.

## IV. <u>CONCLUSION</u>

The Court has considered the parties' pleadings and other relevant information in the record, the relevant factors set forth in § 3582(c), the applicable Sentencing Commission policy statements, and the § 3553(a) factors. Having done so, the Court concludes that while Mr. Harris's Motion is properly before it, Mr. Harris has not demonstrated extraordinary and compelling reasons for his early release, and that even if he had, on the record as it now exists, his release would be improvident based on the factors the Court must consider under § 3553(a). Accordingly, Mr. Harris's Motion for Compassionate Release/Reduction of Sentence pursuant to 18 U.S.C § 3582(c)(1)(A)(i) (ECF No. 140) is DENIED without prejudice to its reassertion if further facts support it.

An appropriate Order will issue.


s/ Mark R. Hornak
Mark R. Hornak
Chief United States District Judge


Dated:  September 16, 2021
cc:       All counsel of record
           Mr. Reginald Harris (via U.S. Mail)